## Caudill v. Commonwealth.

(Decided October 29, 1913).

### Appeal from Lee Circuit Court.

1. Criminal Law—Homicide—Trial—Evidence—Weight and Sufficiency.—In a prosecution for homicide, evidence examined and held sufficient to sustain verdict of jury.

2. Criminal Law—Homicide—Trial—Doubtful Rulings as to Admission or Rejection or Evidence—Harmless Error.—In a prosecution for homicide, doubtful rulings as to the admission and rejection of evidence made upon the trial, if not prejudicial to the substantial rights of the accused, do not authorize a reversal.

3. Criminal Law—Trial—Continuance.—In a prosecution for homicide where, upon the calling of the case for trial, an application for a continuance, on the grounds of the absence of one of several counsel and of material witnesses, is made by the accused, and an affidavit in support thereof is filed, the affidavit not showing that the counsel conducting the trial did not have ample opportunity to be advised of the facts necessary for the defense of the accused, and it appearing from the record of the trial that such counsel ably conducted the defense, refusal of a continuance by the trial court on account of the absence of one of the counsel is not an abuse of discretion.

4. Criminal Law—Trial—Continuance.—Where the trial was had at a term subsequent to that of the indictment term, and so much of the affidavit of the accused as contained the statements, to which it was claimed the absent witnesses would testify, was permitted to be read to the jury as the depositions of such absent witnesses, thereby giving to the accused the benefit of their testimony, the denial of a continuance, by the trial court was not error; and accused had no right to demand of the Commonwealth's attorney that he admit the truth of such satements.

5. Criminal Law—Trial—Instructions.—In a prosecution for homicide, the incorporation in a murder instruction of a provision authorizing the jury to find the accused guilty as an aider or abettor of the crime, was not prejudicial error, where the evidence showed that the deceased was shot and killed by the accused alone.

SAM HURST for appellant.

JAMES GARNETT, Attorney General, D. O. MYATT, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, John Caudill, was indicted in the Lee Circuit Court for the murder of Tom Campbell. The trial resulted in a verdict finding him guilty as charged and fixing his punishment at confinement in the penitentiary for life. He prosecutes this appeal from the judgment entered upon that verdict and asks its reversal upon the following grounds: First, because the trial court refused him a continuance of the case upon an affidavit filed for that purpose; second, because of error committed by that court in instructing the jury; third, because the verdict is contrary to the evidence; and fourth, because of further error committed by the trial

court in admitting incompetent evidence against appellant and rejecting competent evidence offered in his behalf.

Time will not be consumed in discussing the third and fourth grounds. Neither seems to be seriously relied on by appellant's counsel. As to the third, it is sufficient to say that our reading of the evidence found in the record convinces us that the verdict, instead of being contrary to the evidence, is fully supported by it. The fourth ground is not even supported by a reference in the brief of appellant's counsel to the alleged incompetent evidence admitted against him, or to the alleged competent evidence he was not permitted to introduce. We, however, find in the record, as in nearly all cases of a similar kind, some doubtful rulings of the trial court, both in the matter of admitting and rejecting evidence, but they do not constitute error prejudicial to the substantial rights of the accused, and are not, therefore, of a character to entitle him to a reversal.

We have given the first ground relied on for a reversal careful consideration, because of the evident earnestness with which it is pressed by counsel for appellant. It appears from the affidavit filed by appellant in support of his motion for a continunce, that the grounds relied on for the postponement of the trial were the absence of J. F. Sutton, one of his attorneys, and witnesses, Mike Gabbard and Flem. Deaton. It was stated in the affidavit that Judge Sutton, who had accidentally broken a leg some weeks previously, was unable to attend the trial; also that he had been employed by appellant to conduct his defense because of his ability as a lawyer, his wide acquaintance among the people of Lee County, and his experience in criminal trials; that Sutton had represented him upon an application for bail before the judge of the county court shortly following his arrest under a bench warrant issued on the indictment, and, by reason of the knowledge thereby obtained of all the facts relied on to establish appellant's defense, the services of Judge Sutton would have been of great value to him upon the trial. The record, however, discloses that attorneys, Samuel Hurst, the partner of Judge Sutton, and H. T. Beatty, were also employed by appellant, and that they represented him throughout the trial. While the affidavit for the continuance sets forth appellant's unwillingness to go into trial with the two lawyers last named, it does not show

that they were not present at the hearing of the application for bail, or that their opportunities for learning the facts with reference to appellant's defense were not otherwise equal to those enjoyed by Judge Sutton; and the skill, ability and zeal, with which they conducted his defense, fully appear from the proceedings on the trial disclosed by the record. It is, therefore, apparent from the record that appellant was not prejudiced in any substantial right by the absence of Judge Sutton, and that the refusal by the circuit court of the continuance on that ground was not an abuse of discretion.

We are not disposed to hold, as a matter of law, that a continuance, on account of the illness and absence of one of the accused's counsel, should be allowed, where it is made to appear, as in this case, that he was defended by other counsel, whose skill and fidelity throughout the trial is apparent from the record. Howerton v. Commonwealth, 129 Ky., 482; Shepherd v. Commonwealth, 26 Rep., 698; Moore v. Commonwealth, 26 Rep., 356; Kennedy v. Commonwealth, 32 Rep., 1381. Appellant's affidavit did not entitle him to a continuance on account of the absence of the two witnesses therein named. The trial was not had during the term at which the indictment was returned, but at the second term thereafter, therefore, the court had the right, with the consent of the Commonwealth's attorney, to permit so much of the affidavit as contained the statements to which it was claimed the absent witnesses would testify, to be read on the trial as the depositions of such witnesses; and, as it was read on appellant's trial and he thereby secured the benefit of the testimony of the absent witnesses, he cannot complain that the case was not continued that their personal attendance and oral testimony might be procured. He had no right to demand that the Commonwealth's attorney admit the truth of the statements of these witnesses. Section 189, Criminal Code.

In Bowen v. Commonwealth, 146 Ky., 486, we, on this subject, said: "Section 189, Criminal Code, is mandatory, and in all cases where a continuance is asked at the term of court at which the indictment is returned, and a sufficient affidavit is filed in support of such motion, the court must grant the continuance unless the attorney for the Commonwealth consent that the statements in the affidavit for a continuance as to what the accused would prove by the absent witnesses, if present,

are true. The provisions of this section, however, are applicable only where a continuance is sought at the term at which the indictment is returned. In all other cases the attorney for the Commonwealth is only required to consent that the statements in the affidavit as to what the absent witnesses would say may be read to the jury as the depositions of such absent witnesses."
* * *

Counsel for appellant contend that, as the instructions failed to advise the jury in what state of case appellant had the right to shoot the deceased in the defense of his son, James Caudill, they failed to give all the law of the case. This criticism would have much force if there had been any evidence upon which to base it, but as there was no such evidence, the instructions, as expressed, could not have misled the jury or prejudiced any substantial right of appellant.

Instruction number one told the jury, in substance, that if they believed from the evidence beyond a reasonable doubt, appellant unlawfully, willfully, maliciously, feloniously, and with malice aforethought, himself shot and killed deceased, or that deceased was so shot and killed by James Caudill and appellant was then and there present and that he unlawfully, willfully, feloniously and with malice aforethought, did aid, counsel, advise or assist James Caudill to so shoot and wound deceased, they should find him guilty of murder and fix his punishment at death or confinement in the penitentiary for life, in their discretion. This instruction might properly have omitted the submission to the jury of any question as to whether appellant aided or abetted in the shooting and death of the deceased, as the evidence demonstrated that the deceased was shot and killed by appellant alone, but its failure to do so was not prejudicial error.

The second instruction properly submitted to the jury the question whether or not the shooting and killing of deceased, if done by appellant, was in a sudden affray or in sudden heat or passion and without previous malice. It contained the appropriate terms defining the crime of voluntary manslaughter and told the jury, in the event they found him guilty under that instruction, to so say in their verdict and no more. This was proper, as the punishment for voluntary manslaughter is not inflicted by the jury, but by the judgment of the court under the indeterminate sentence statute.

The third instruction correctly gave the law of self-defense, and told the jury in what state of case it would excuse appellant for the killing of deceased.

The fourth instruction advised the jury of the presumption of the appellant's innocence, and, further, that if they should believe from the evidence beyond a reasonable doubt that he was guilty of one of the crimes defined in the instructions, but had, from the evidence, a reasonable doubt as to which of them he was guilty of, it would be their duty to find him guilty of the lesser offense. And by instruction five they were told that, unless they believed from the evidence beyond a reasonable doubt that he was guilty of murder or voluntary manslaughter, they should find appellant not guilty.

In order that what we have said with respect to the instructions may be understood, the salient facts connected with and surrounding the homicide should be here stated. It occurred on the morning of the November election, 1912, near the home of Henry Gross, in Lee County, at which were assembled Gross, the members of his family, Mrs. Nannie Palmer, Sol. Roberts, Will Barrett, Tom and Boyd Vires, and the deceased, Tom Campbell, the voters of the party having met there for the purpose of attending the election. While they were preparing to leave the premises of Gross, the appellant, his son, James Caudill, and Claiborne Johnson were seen coming down the road on their way to the election. The deceased, Tom Campbell, who was a constable of Lee County, then had in his possession a bench warrant against James Caudill and Steve Caudill, his brother, which had been issued upon an indictment against them for false swearing, pending in the circuit court of Lee County.

It fully appears from the evidence that appellant and his son, James Caudill, had previously been advised of the deceased's possession of the bench warrant and of his purpose to arrest James and Steve Caudill, and that each of them had made threats that they would kill Campbell if he attempted to make the arrest, which threats had been communicated to the latter. When Campbell saw that James Caudill was with appellant and Johnson, he announced it to be his purpose to then and there arrest him and summoned those who were standing about him as a posse to assist him in making the arrest. Before proceeding out into the road to make the arrest, he armed himself with a second

pistol; one of the pistols he carried in a scabbard, and the other in his hand. When Campbell reached the road where the Caudills were, James Caudill proceeded down the road in a fast walk or run, getting beyond Campbell some distance and behind a tree. Campbell then passed appellant, and going in the direction of James Caudill, told him that he had a warrant for him. At that juncture, appellant, with pistol in hand, intercepted Campbell and demanded to see the warrant. Campbell refused to hand it to appellant and began to read it, and while so engaged was repeatedly shot by appellant and immediately killed.

The five or six witnesses introduced in behalf of the Commonwealth all testified that appellant fired the first shot and practically all of them that entered Campbell's body; that Campbell did not shoot at all; that the pistol carried in the scabbard was never drawn by him; and that the pistol carried in his hand had only one empty chamber, which chamber they knew to be empty when and before he left Gross' yard. Appellant, James Caudill, and Johnson testified that the first shot was fired by Campbell at appellant and that appellant did not shoot Campbell until the latter fired two or three shots at him. During the fight appellant was shot through the leg by Henry Gross, but this wound was not received until after appellant had killed Campbell and taken a shot at Gross. According to the evidence, appellant was so close to Campbell when he shot that his pistol set the latter's shirt afire.

In giving his testimony, appellant did not claim to have shot Campbell in defense of his son, James Caudill, but in his own defense. This claim is, however, poorly supported by his own and other evidence introduced in his behalf; and the evidence, as a whole, disproves it, and leaves no doubt of the correctness of the verdict of the jury. Indeed, the evidence in its entirety, fairly shows that Campbell was shot and killed by appellant; that the killing was done in resisting an attempted lawful arrest of the latter's son, and in pursuance of threats theretofore made by appellant to take the life of the officer upon his attempting to make such arrest. There is, therefore, no ground upon which to rest appellant's contention that the homicide was excusable.

Wherefore, the judgment is affirmed.