## Brandriff v. Commonwealth.

(Decided January 18, 1929.)

NAT R. DAVIDSON and J. RIVERS WRIGHT for appellant.

J. W. CAMMACK, Attorney General, and G. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Between 9 and 9:30 o'clock a. m. on September 2, 1927, the bank of St. Helens, located in Shively, Jefferson county, Ky., was robbed by four bandits, three of whom went into the bank office and committed the robbery, while the fourth one remained in the high-powered automobile stationed at or near the front of the bank. Of the three who went into the bank office one of them held pistols on the officers and servants of the bank located behind the counter; another one with drawn weapons forced the customers upon the outside of the counter to go behind it while the third one executed the robbery. They immediately got in the automobile, the engine of which had been left running, and rapidly disappeared. On January 31, 1928, an indictment was returned by the Jefferson county grand jury charging appellant and defendant below, Edward Brandriff, alias Walter Braddy, with being one of the four who perpetrated the robbery. He was arrested in St. Louis, where he resided, and was brought to Louisville, and on February 7 thereafter he was arraigned and entered a plea of not guilty, whereupon the prosecution was set for trial on the following March 15. On the latter day the commonwealth announced ready, but the defendant moved for a continuance, and in support thereof filed his and other affidavits, but the court overruled his motion, and at the trial he was convicted and punished by confinement in the penitentiary for a period of 20 years, to reverse which he prosecutes this appeal.

The brief filed by counsel in his behalf discusses solely and exclusively the alleged error of the court in overruling his motion for a continuance. Before directing our attention to and disposing of that ground, we deem it proper to say that the employee witnesses who testified at the trial, as well as a customer of the bank who was in the office at that time, and who had just made

a deposit, positively identified defendant as the one who remained outside of the counter and forced those in that part of the office behind the counter and forced them and all employees to lie down on the floor while the robbery was being perpetrated. Mr. R. B. Finley was a customer of, and not employed in, the bank, and he testified that defendant with a pistol forced him from the front of the counter behind it; that he had just made a deposit, and had retired from the window when the robbers entered. He furthermore testified that he closely observed the features and individual marks of defendant, who was immediately in front of him, and he described such marks, one of which was a scar on one side of defendant's face, and his most intelligent testimony is absolutely convincing that he was both impartial and truthful. Other employees of the bank were quite as positive in identifying defendant, but they did not refer to the identifying marks as did the witness Finley.

Coming now to a consideration of the only ground pressed for reversal, defendant's affidavit in support of his motion for a continuance stated in its first paragraph the fact of his arrest and continued incarceration in the Jefferson county jail, since that time, and continues by saying "that he is innocent of the charges against him and did not know anything about them until his arrest; that he has never been in Jefferson county, Kentucky, before in his life until brought here by the officers." He then stated that he was without an estate or income; that he was married, and had spent all of his wages before his arrest in the support of his family; and that his father, mother, brother, and wife, all of whom reside in St. Louis, were willing to furnish the financial means for his defense, including the attendance of witnesses in his behalf or the procuring of their testimony by depositions, but that neither of them had any money, but that they had recently commenced negotiations through which they confidently expected to borrow some for the purposes indicated, and that, if the prosecution was continued, he would thereby be enabled to present his defense. The affidavit then continues: "He further states that he has a complete defense to the charges now pending against him in this court and that he will be able to prove that *on the day* of the alleged robbery he was in the City of St. Louis and suffering with an injured leg which interfered very much with his movements. He states that he

can secure the attendance of Mr. George King, a business man of St. Louis, Mr. Charlie Boggiano and Mr. Joseph Seiker and other reputable citizens of that city, Ray Brandriff, William Brandriff, Amelia Brandriff, and Josephine Brandriff, this affiant's mother and father-in-law and in all about fifteen witnesses who will each testify that they saw this affiant and defendant, Edward Brandriff, in the City of St. Louis, Missouri, *on the day of the alleged robbery,* they will be able to fix the date although some six or seven months ago, by reason of specific happenings on or about that date.'' (Our emphasis.)

He then stated that the same witnesses would testify that they had seen him in St. Louis on days prior and subsequent to the date of the robbery for which he was indicted, and that, because of his and his relatives' crippled financial condition, he was unable to secure the personal attendance of his witnesses or to take their depositions. Following that, he also stated in his affidavit that, in addition to his local counsel in Kentucky, he had employed in St. Louis John L. Sullivan, a regular practicing attorney in that city, and that he had suddenly become ill and was unable to attend the trial, and in support of that statement he filed the affidavits of such foreign attorney and of a physician of St. Louis, the latter of whom stated that the attorney was suffering with ''a severe cold bordering on pneumonia.'' He also filed as exhibits with his affidavit those of his relatives above referred to, the material parts of all of which were in practically the same language, and as an illustration of which we insert that portion of the affidavit of his brother, Hugh Braddy: ''Affiant further states that on the second day of September, 1927, defendant Edward Brandriff was at my home in the City of St. Louis and was seen by me a number of different times *on that date* and I am able to fix this definite date by reason of specific events that happened on that date.'' (Our emphasis.) Each of the affidavits then stated that between the time of defendant's arrest and the 15th of March, when his case was set for trial and he was tried, affiants were without sufficient money to defray their expenses from St. Louis to Louisville, but that ''at this time affiant is in possession of sufficient funds to enable him to make the trip to Louisville, Kentucky, to attend the trial and will make the trip to Louisville and testify in defednant's

behalf and establish his *testmony as above set forth*" (our emphasis), if the continuance is granted.

It will first be observed that no diligence of any character is pointed out in any of the affidavits, including that of defendant himself. It is true that he manifests that he has been incarcerated in jail, and that both he and his relatives in St. Louis were (or rather had been) without financial means. He nowhere states that he was unable to obtain such means from friends or other sources, or that he was totally without friends from whom he could obtain such assistance, and it impresses the court as somewhat peculiar that the avenue for the obtention of the necessary funds was not discovered until immediately at the arrival of or upon the day the case was set for trial. Defendant had 36 days from the day he was arraigned and his trial set within which to take the depositions of his witnesses or to make such arrangement for their attendance as he desired, and neither the trial court nor this court was informed by his affidavits as to what, if any, steps he had or had not taken for the accomplishment thereof other than the bare statement of the want of sufficient finances.

Cases relied on by counsel, an illustration of which is Miller v. Commonwealth, 197 Ky. 703, 247 S. W. 956, present a far different state of facts. In that case a nonresident negro was charged with murder; his home being in Alabama where his parents resided. His crime was committed on October 4. He was indicted the next day. Counsel for him was appointed on the 9th and his case set for trial, and he was tried on the 12th of the same month. Appointed counsel for him filed an affidavit setting up those facts and pointing out that sufficient time had not elapsed for him to acquaint himself with the facts, and for which reason he was unable to present a defense, and defendant's affidavit also filed in that case showed the absence of a witness in Louisville for whom a subpœna had been issued at the time his case was set for trial. Surely counsel cannot be serious in the contention that the Miller case is a precedent entitling his client to a continuance upon the same ground that it was ordered in that case. The other cases cited by counsel in their brief contain the same material differentiating facts, and, if the affidavits now under consideration with reference to the absence of witnesses were in all respects sufficient, it is extremely doubtful if the proper showing

of diligence was made to entitle defendant to the continuation of his case.

But there is a fatal defect in the substance of his application for a continuance, and which is: That neither his affidavit, nor that of any one filed therewith, contain sufficient facts to establish his only defense, which was an alibi. It will be noticed that all that any of the affidavits state is that the absent witnesses would testify that they saw defendant in St. Louis *on the 2d day of September, 1927,* which was the day of the robbery for which defendant was indicted and tried. We have hereinbefore pointed out that the robbery occurred between 9 and 9:30 a. m. on that day, and that the robbers immediately departed in a high-powered automobile. We take judicial notice of geography and distance, and from it we are informed that it would be by no means impossible for defendant and his confederates to make the trip in such a conveyance from the place of the robbery to St. Louis within six hours, and it would be quite an easy task to do so within seven hours. If so done, he would have arrived in St. Louis at between 3:30 and 4:30 p. m. on that day, and all of his witnesses could have seen him there on that same day, but after he had previously committed the robbery in its early forenoon. Moreover, we have no doubt but that the trip could have been made from the city of Louisville to St. Louis on a number of railroad trains within time for the witnesses to have seen defendant in the latter city on that same day. If the testimony of defendant's absent witnesses would have completely established his alibi, it would have been an easy matter for him to have so demonstrated in his application, and we are not authorized to conclude that his failure to do so was the result of oversight. At all events, his failure to fit their testimony to the exigencies of his case demonstrates the insufficiency of his application to obtain a continuance in order to enable him to establish his alibi, which, we repeat, was the only defense upon which he relied. The case was submitted on the testimony of the commonwealth alone, defendant not taking the stand, nor did he offer to read his affidavit for a continuance; but whether the order of the court overruling the motion for a continuance permitted him to read his affidavit as the testimony of his absent witnesses is not disclosed by the record. In the circumstances, as so substantially outlined, we are convinced that the court

did not abuse a sound discretion in overruling defendant's motion for a continuance upon the ground of absence of witnesses.

But it is insisted that defendant was entitled to a continuance because of the absence of his Missouri counsel. It will be noted that he was represented by two local counsel who no doubt were more familiar with the local practice than the foreign one, and it is not shown that the absent one was either the leading counsel or that he possessed any greater ability in the trial of such cases than either of the two local ones who were present at the trial. Moreover, we have held in a number of cases that, in the absence of some specially pertinent and influencing facts, a defendant is not entitled to a continuance as a matter of right solely upon the ground that one of his counsel was absent when he had others who were present and who possessed equal skill and ability with the absent one, and that in such circumstances the trial court did not abuse a sound discretion in overruling the motion for a continuance on that ground. Some of the later cases, in which others are cited so holding and in which the facts appear, are: Caudill v. Commonwealth, 155 Ky. 578, 159 S. W. 1149, and Perry v. Commonwealth, 200 Ky. 696, 255 S. W. 522. The rule as so announced in those cases is one of universal application, and it is a most wholesome one. Were it otherwise, the trial of criminal cases and the enforcement of the criminal laws would be greatly obstructed, and in some instances wholly defeated. All that a defendant charged with a serious crime would have to do would be to employ a number of attorneys, some one of whom, because of the numerous ailments to which humanity is subject, might probably be ill on the day set for trial or absent for some other cause, and a continuance awarded therefor, and which, probably, would be repeated on the day to which the case was continued. While the law entitles a defendant in a felony charge to be represented by counsel, there is no law with which we are acquainted that entitles him to have present at his trial all and each of the many individual counsel that he sees proper to employ. If those present possess sufficient ability and skill to properly conduct his trial, and do so with fidelity, then defendant has had the benefit of all the rights extended to him under the law.

In the brief of defendant's counsel there appears this statement: "There are many other errors com-

plained of in our motion and Grounds for New Trial which have not been mentioned in this brief, but will be brought to the attention of this Court in the reading of the Transcript and Bill of Exceptions," but which is only a general invitation for this court to search the record in an effort to find a reversible error and which we have heretofore uniformly declined to do. See Walker v. Commonwealth, 211 Ky. 174, 277 S. W. 314, McCorkle v. Chapman, 181 Ky. 607, 205 S. W. 682, and cases referred to therein. However, we have closely scrutinized the record, and find nothing therein outside of the matters hereinbefore discussed remotely resembling error.

For the reasons indicated, the judgment is affirmed.