## Frost v. Commonwealth.

(Decided April 16, 1935.)

FLEM D. SAMPSON for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MUR-PHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

Under an indictment charging him with the murder of Frank Collins, Bige Frost has been found guilty of voluntary manslaughter and his punishment fixed at imprisonment for twenty-one years and he is appealing.

The first ground relied on for reversal is that the verdict of the jury is not supported by and is palpably and flagrantly against the weight of the evidence and this and other grounds relied on necessitate a review of the evidence. However, on account of the number of witnesses introduced and the large volume of evidence, a detailed statement of it cannot be made.

The homicide occurred about 4 o'clock on the afternoon of November 20, 1933, about 400 yards from the home of deceased in Knox county. It appears in evidence that appellant and deceased started out early in the morning on a rabbit hunt, each of them armed with a single barrel breach loading shotgun and appellant also had a .45 caliber pistol which he habitually carried in a holster under his coat. After hunting for a few hours, deceased proposed that they go to the store of Steve Smith about 2 miles from his home where he desired to purchase a pair of shoes for one of his children and they arrived there about noon. Appellant, Steve Smith and others testified that deceased had some liquor and was considerably intoxicated. Appellant testified that he also took two or three drinks, but that

he was not intoxicated. While at the store, deceased was somewhat boisterous and profane in his talk, yet it appears that he was in a friendly mood with appellant and Mr. Smith. After leaving the store, appellant testified that deceased threatened to shoot a woman by the name of Mills and did fire a shot and repeated this conduct toward some school children later on, but it is apparent that he did not really intend to shoot any of these parties. After stopping at different places and talking with different parties, appellant and deceased arrived at the gate leading to the latter's home and only a few feet away from where the tragedy occurred. Appellant testified that as they approached the scene of the homicide, deceased jumped on him for drinking the liquor and asked him for a drink. When he replied that he had none, deceased insisted that he did, asked him to go get some liquor, and finally said, "You God damn son of a bitch, you had better give me a drink." He paid no attention until he heard deceased cock his gun, he then turned his head and the gun fired shooting part of the brim off his hat, blackening and powder burning his face and scorching his hair; that the concussion knocked him down; that as he got up, deceased was pointing his gun toward him and he tried to shoot his gun and found it would not fire so he threw it down and shot deceased with his pistol. He fired two shots, one ball entering the side of his face and head and coming out the back of his neck and the other entering the breast and coming out at the back or entering the back and coming out at the breast. Appellant testified that after he fired the first shot deceased came on toward him until he fired again. Appellant's mother lives 100 yards or so from the home of deceased and she and others were working in a field nearby. A number of other persons were near enough to hear the shots, but no one except the participants witnessed anything that occurred at the scene of the shooting. Immediately after the shooting, appellant began to scream and cry, and, upon leaving, met a neighbor and told him that he had killed Frank Collins. He also told his sister and went on to the home of deceased and told Mrs. Collins that he had killed her husband. Two or three witnesses for the commonwealth who were near the scene testified that they only heard two shots. Appellant's mother, sister, and other members of her family, as well as some witnesses who were not related,

testified that they heard three shots fired, the first shot being louder than the last two and appeared to be from a shotgun. Appellant's relatives and other witnesses testified that when they saw him shortly after the tragedy a piece was torn from the brim of his hat and the side of his face was blackened and his hair singed. A witness for the commonwealth who met him immediately after the shooting testified that he noticed no torn place on his hat and that if his face was black or powder burned he failed to notice it. Witnesses who were at the scene about dark testified that appellant showed them where he and deceased were standing when the latter fired the shotgun and that some of them pointed a gun in that direction and made an examination of the hillside back of where appellant was standing, but could find no evidence of the shooting on the weeds, brush, or on the ground; that they made a further examination the next morning and found no evidence of shots. Appellant's mother and others testified that they made an examination of the ground and found where weeds had been cut off by shot and also found a few shots where the ground had been torn up. One witness testified that he found the piece which was torn from the brim of appellant's hat 10 or 12 feet from where he claimed to have been standing and others testified that they were present when it was found. This hat and the piece that had been torn from the brim were introduced in evidence. A number of witnesses testified that deceased's gun had been broken down and an empty shell had been partially extracted, but the evidence of some of the witnesses introduced by the commonwealth indicates that they saw no such condition. Witnesses for the commonwealth testified that appellant frequented the Collins home when deceased was absent and was often seen talking to Mrs. Collins at different places. There was no evidence of acts of actual impropriety between them, but appellant's conduct in this respect was such as to attract the attention of neighbors and cause two or three of his neighbors and friends to speak to him about the matter and to advise him to desist in his attentions toward her. On one or two occasions while appellant did not directly make any threats against deceased, his language at least carried veiled threats. Some of these conversations occurred only a week or so before the homicide. There is a conflict of evidence as to whether the shots entered

from the front or back, but the weight of evidence indicates that the shot through the head was fired from a point in front of deceased.

From the foregoing, it will be seen that there are many facts and circumstances in evidence to indicate that deceased did not fire a shot and that appellant was not, as he claimed, acting in self-defense when he fired the fatal shots. After all, it was a question of the credibility of witnesses and the weight to be given their evidence and it is appellant's misfortune that a jury of his fellow countymen, in whose selection he and his counsel had a part, determined these questions against him.

The unvarying rule in this jurisdiction is that the verdict of a properly instructed jury supported by evidence of probative value will not be disturbed unless it is so palpably and flagrantly against the evidence as to appear that it was the result of passion and prejudice. Frasure v. Commonwealth, 250 Ky. 397, 63 S. W. (2d) 475; Moore v. Commonwealth, 223 Ky. 128, 3 S. W. (2d) 190. Applying this rule to the evidence as a whole, it is apparent that the court would not be warranted in disturbing the verdict on this ground.

It is next argued that the court erred in admitting evidence concerning appellant's attention to Mrs. Collins and his threatening attitude when spoken to by others about the matter, but this contention is without merit since such evidence is competent as bearing on the question of motive or the state of mind of accused toward deceased.

Powers Dixon was called as a witness by appellant, and the attorney for the commonwealth objected to him testifying on the ground that he had remained in the courtroom in disobedience to the rule asked and the admonition of the court that the witness remain out of the courtroom during the hearing of testimony. In response to questions by the court, the witness testified that he had been in the courtroom and heard appellant testify. Thereupon, the court, over the objections of appellant, refused to permit the witness to testify, and it is now urged that this action upon the part of the court constituted prejudicial and reversible error. Attorneys for appellant made an avowal that this witness would testify that he saw the powder burns on the side

of appellant's face and the torn place on the brim of his hat and would also testify concerning the wounds upon the body of deceased indicating that the point of entrance was from the front. Unquestionably, the court erred in refusing to permit this witness to testify, and, if no witness other than the mother and relatives of appellant had testified about the matters which it is avowed the witness would have testified, we would unhesitatingly hold that the error was prejudicial, but these same facts were testified to by a number of witnesses who were not related to appellant, and it is clearly manifest that this added evidence would not have had a controlling or any decisive effect on the verdict of the jury. In passing, however, we feel that we should give emphasis to the fact that if a witness, without the procurement of the accused, violates the rules and admonitions of the court and remains in the hearing of other witnesses while testifying, he and not the accused should be penalized for his misconduct.

As a further ground for reversal, it is urged that the trial judge by looks of disapproval, insinuating smiles and side remarks led the jury to believe that he was of the opinion that appellant was guilty and should be convicted; that by the conduct of the judge and attorney for the prosecution which provoked laughter upon the part of the jury and people in the courtroom and by counsel for the commonwealth winking at members of the jury, the trial was rendered a farce. The only place in the record where we find any reference to this alleged misconduct of the court and counsel is in the motion and grounds for new trial and in supporting affidavits. If such misconduct occurred, no attention was called to it at the time and no objections were made or exceptions saved. Since this question was presented for the first time in the motion and grounds for new trial and there are counter affidavits by counsel for the commonwealth that no such thing occurred, this ground of complaint cannot be sustained.

It is next argued that the self-defense instruction given by the court was erroneous. No objection is made to the form of the instruction given, but it is merely urged that it should have submitted facts in evidence concerning the shot or shots fired by deceased and the effect thereof as to powder burning appellant and tearing his hat. The instruction given follows sub-

stantially the usual and approved form and authorized the jury to acquit appellant upon the ground of self-defense and apparent necessity, if they believed from the evidence that at the time of the shooting he had reasonable grounds to believe and did believe that deceased was about to inflict upon him death, or some great bodily harm and that to shoot, wound, and kill deceased was necessary, etc. This form of self-defense instruction has been followed from time immemorial and we find no authority and none had been pointed out that such instruction should refer to particular matters in evidence to sustain the accused's plea of self-defense.

As a further ground for reversal, it is argued that the court erred in failing to sustain appellant's motion for a peremptory instruction because the justice of the peace who issued the warrant required the defendant over his objections to be sworn and testify at an inquest held by the justice on the night of the homicide. In this contention counsel cite and rely on the Constitution of the United States, Fifth Amendment, Kentucky Constitution, section 11; Gentry v. Commonwealth, 215 Ky. 728, 286 S. W. 1040; Hill v. Commonwealth, 232 Ky. 453, 23 S. W. (2d) 930, and other cases from this and other jurisdictions.

When Sam Jones, justice of the peace, was introduced by the commonwealth, he was asked on cross-examination if at the inquest he required appellant to be sworn and to testify. He stated that he had no recollection that he did and further testified that if appellant was sworn and did testify, he did not require him to come and did not force or compel him to testify. Appellant testified that he was called and sworn as a witness at the inquest and did testify but did so unwillingly.

Section 11 of our Constitution, among other things, provides that one standing accused of a crime "can not be compelled to give evidence against himself." The Federal Constitution and the Constitutions of various states carry similar provisions. One of the leading cases on this question is Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110, and another is Emery's Case, 107 Mass. 172, 9 Am. Rep. 22. In the latter case it is held in effect that a provision in the Massachusetts Constitution that no person "shall be

\* \* \* compelled to accuse, or furnish evidence against himself," extends to all investigations of an inquisitorial character instituted for the purpose of discovering crime or the perpetrators of crime by putting suspicioned parties upon examination in respect thereto, although not in the course of a pending prosecution; that the principle applies equally to any compulsory disclosure of guilt by the offender himself whether sought directly or indirectly. The case of Hill v. Commonwealth, supra, indicates that this principle applies to inquests held by a coroner or justice of the peace. The quoted provisions of the Constitution and all the cases from this and other jurisdictions embody the idea of compulsion and indicate that the immunity may be waived and that one who voluntarily or without compulsion gives evidence may not thereafter invoke this constitutional provision. The justice testified that appellant did make the statements to him about the shooting and he also made statements to a number of persons as to how the difficulty occurred. So far as we recall, no other witness testified that appellant was sworn or gave evidence at the time of the inquest, but be that as it may, there is a conflict in evidence as to whether he did actually testify, and, if he did, he only stated that he was unwilling to testify, but did not state that he claimed any immunity or made any objections or that any compulsion or persuasion was used to get him to testify. In such circumstances, it is apparent that the court did not err in this particular.

While not referred to in the points and authorities, we find in the body of the brief question made that the commonwealth failed to show that the tragedy occurred in Knox county. Sam Jones, justice of the peace, who first testified for the commonwealth testified that the place where he found the body was in Knox county. Appellant and a number of others testified where deceased fell and where he was later found by others and this was at a point where Mr. Jones saw the body. There is also evidence that deceased's home was in Knox county and the tragedy occurred only a few hundred yards from that place.

Finally it is urged that the court erred in overruling appellant's motion for a continuance. One of the grounds of continuance was the absence of two witnesses, but the court permitted affidavits setting forth

what these witnesses would state if present to be read as their evidence. These witnesses were not present and knew nothing of the facts concerning the shooting. It is claimed that they knew of misconduct of deceased earlier in the afternoon, and other witnesses testified as to the matters referred to in the affidavits. In the circumstances it is very apparent that appellant's cause was not prejudiced by reason of the absence of these witnesses.

The other ground for continuance was that one member of the firm of attorneys retained to defend appellant was engaged in a political campaign and could not be present. Little is or could be said in brief concerning this ground assigned for continuance. It is not asserted in the affidavit that the other member of the firm who was present was not acquainted with the facts or not prepared to properly present appellant's defense, nor does the record disclose any such state of case. Appellant's defense was ably and skillfully presented. One represented by such capable and eminent counsel has no just ground for complaint, because of the absence of other counsel.

The granting or refusing a continuance is a matter addressed to the reasonable discretion of the trial court and the appellate court will not interfere in the absence of a showing that such discretion has been abused. Brandriff v. Commonwealth, 227 Ky. 389, 13 S. W. (2d) 273; Holmes v. Commonwealth, 241 Ky. 573, 44 S. W. (2d) 592.

Finding no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.