RENDERED: JANUARY 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0180-MR

JOHN T. BELL                                                                     APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
ACTION NO. 18-CR-001294

COMMONWEALTH OF KENTUCKY                                         APPELLEE

AND

NO. 2020-CA-0923-MR

JOHN T. BELL                                                                     APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE MITCH PERRY, JUDGE
ACTION NO. 18-CR-001294

COMMONWEALTH OF KENTUCKY                                         APPELLEE

# OPINION
# AFFIRMING

** ** ** ** **

BEFORE:  ACREE, DIXON, AND K. THOMPSON, JUDGES.[1]

THOMPSON, K., JUDGE:  John Bell pleaded guilty to one count of unlawful use of electronic means to induce a minor to engage in sexual or other prohibited activities.  In accordance with the terms of his plea, Bell received the statutory minimum sentence of one year of imprisonment.  He nonetheless brought these consolidated appeals.  We affirm.

The core facts underlying Bell's conviction are uncontested.  In 2018, Bell responded to an ad placed by the Louisville Police Department in the dating section of a website.  The ad, which was part of a sting operation, purported to have been placed by a female who was 18.  Eventually, an undercover officer told Bell during a conversation that she was only 17.  Undeterred, Bell agreed to meet the undercover agent at a hotel and agreed to pay her a "donation" of $75 for sexual activities.  Bell was arrested and indicted for one count of unlawful use of electronic means to induce a minor to engage in sexual or other prohibited activities – the same offense for which he had been previously convicted.

---

[1] Judge Kelly Thompson authored this Opinion before his tenure with the Kentucky Court of Appeals expired on December 31, 2022, and prior to the adoption of the Kentucky Rules of Appellate Procedure on January 3, 2023.  Therefore, all citations herein are to the former Civil Rules.  Release of this Opinion was delayed by administrative handling.

Bell's counsel filed a motion to have Bell undergo a competency evaluation. The court granted the motion and ordered Bell to undergo a competency evaluation at the Kentucky Correctional Psychiatric Center ("KCPC"). Although the report noted Bell's autism and history of serious mental health concerns, including believing that rap songs by Eminem somehow pertained to or impacted Bell's life, the report concluded Bell was competent.[2]

In November 2019, Bell and the Commonwealth reached a plea agreement which called for Bell to receive one year of imprisonment, the statutory minimum.[3] Three days before sentencing, Bell sought to permit attorney Mark

---

[2] The trial court did not conduct a post-evaluation competency hearing, nor did Bell seek one. "[W]hen analyzing whether a defendant is competent to stand trial, two separate interests – a statutory right under [Kentucky Revised Statutes] KRS 504.100(1) and a constitutional right under the Fourteenth Amendment of the United States Constitution – are at stake." *Woolfolk v. Commonwealth*, 339 S.W.3d 411, 422 (Ky. 2011). If there is "substantial evidence that a defendant is incompetent," the constitutional right to a competency hearing cannot be waived. *Padgett v. Commonwealth*, 312 S.W.3d 336, 348 (Ky. 2010). However, if there are only "reasonable grounds" to believe a defendant is incompetent then only the statutory right to a hearing is implicated and, like most statutory rights, the defendant may waive the statutory right to a competency hearing. *Id.* But there is no one-size-fits-all bright line demarcating the difference between *substantial evidence* and *reasonable grounds*.

The trial court's order referring Bell to KCPC specifically states there were "reasonable grounds" to question Bell's competency. Record ("R.") at 44. Thus, it appears as if only the statutory right to a competency hearing was triggered. "And because any statutory right can be waived, there would be no error if the trial court declined to hold a hearing upon a valid waiver, despite the mandatory language in the statute." *Id.* At a hearing on Bell's motion to alter, amend, or vacate his sentence, the Commonwealth stated without objection that Bell had waived his right to a post-evaluation competency hearing. Of course, "the best practice would be for the judge to establish on the record whether the hearing has been waived, after the filing of the report." *Id.*

[3] KRS 510.155(6) provides that unlawful use of electronic means to induce a minor to engage in sexual or other prohibited activities is a Class D felony; the penalty range for Class D felonies is

Mahoney from Buffalo, New York to appear *pro hac vice* and to continue the sentencing to allow Mahoney to be present.

Though the motion for a continuance was filed only three days before the long-scheduled sentencing date, it admitted that Mahoney had been "actively assisting" Bell's retained local counsel "[f]or several months . . . ." R. at 82. The motion also stated:

> Secondly, in what precipitated a competency evaluation earlier this year, [Bell] continues to have delusions that Eminem . . . has actively conspired with prosecutors and probation officers. At a meeting with [Bell] on December 15, 2019, [he] advised that everyone on the other side knows about this and will not share this information in discovery. This matter needs to be addressed by [Bell's] mental health providers before moving forward with sentencing.

R. at 82-83.

At sentencing, Bell's retained local counsel stated that Bell had informed his mother after pleading guilty that he still had the delusions about Eminem somehow impacting Bell's life. Counsel asked Bell to undergo another competency evaluation. The Commonwealth opposed any delay, arguing it was a stalling tactic to allow Bell to obtain more credit against his sentence while on

---

one to five years' imprisonment under KRS 532.060(2)(d). Under the current version of the statute, which was amended in 2021, Bell's offense would have been a Class C felony since he had a previous conviction for the same offense.

home incarceration. The court agreed with the Commonwealth and denied the request for a second evaluation.

The court however did ask Bell's counsel if Bell wanted to withdraw his plea and the proceedings were recessed to allow counsel to consult with Bell and Bell's family.

After the recess, counsel stated that Bell was not asking to withdraw his plea. The court then sentenced Bell to one year of imprisonment in accord with the plea agreement. Though not discussed in the plea agreement, the later-issued written judgment required Bell to register as a sex offender, complete the sex offender treatment program ("SOTP"), and complete a five-year period of post-incarceration conditional discharge.

Bell filed a motion to alter, amend, or vacate, asserting the court's denial of Bell's motion to continue deprived him of his constitutional right to have counsel of his choosing present at his sentencing hearing. The motion also alleged the court erred by not ensuring Bell was competent at sentencing and that the factual basis for the plea orally communicated to Bell by the court at the guilty plea hearing was inaccurate because it stated the ad to which Bell responded had an undercover officer posing as a minor when the ad actually said the person who placed it was 18. Also, the motion vaguely contended that if the sentencing had been continued, Mahoney would have "raised the general question of whether or

not the prosecution made reasonably sufficient accommodations in [Bell's] case under the Americans With Disabilities Act [ADA]." R. at 97. Before the court ruled on the motion, Bell filed a notice of appeal, case number 2020-CA-0180-MR.

In June 2020, the court held a hearing (by audio conference, due to the COVID-19 pandemic) on Bell's motion to alter, amend, or vacate. No witnesses testified. After permitting Bell's counsel and the Commonwealth to present arguments, the court denied the motion. Bell then filed another notice of appeal, case number 2020-CA-0923-MR. We have consolidated the two appeals and resolve them both in this combined opinion.[4]

Bell reiterates many of the same issues on appeal that he raised in his motion to alter, amend, or vacate. First, he argues the trial court erred by not conducting a competency hearing when Bell pleaded guilty or was sentenced. Second, he contends the court erred by refusing to continue sentencing to allow Mahoney to be present. Next, he contends the allegedly erroneous factual basis for

---

[4] Kentucky Rule of Criminal Procedure (RCr) 12.02 provides in relevant part that Kentucky Rule of Civil Procedure (CR) 73.02(1)(e) applies to criminal cases; CR 73.02(1)(e) provides in relevant part that the running of time for an appeal is terminated by a timely motion to alter, amend or vacate a judgment under CR 59. In short, Bell's timely motion to alter, amend or vacate tolled the time in which he had to appeal until the resolution of that motion, so Bell's initial notice of appeal was premature. Bell's second notice of appeal notes that he appeals from both the initial final judgment and the order denying his CR 59.05 motion to alter, amend or vacate. We have made plain that we lack jurisdiction over orders denying CR 59.05 motions because those decisions are inherently interlocutory. *See, e.g.*, *Ford v. Ford*, 578 S.W.3d 356, 365 (Ky. App. 2019). As a practical matter, however, we deem the first appeal to relate forward, *see, e.g.*, *Wright v. Ecolab, Inc.*, 461 S.W.3d 753, 759-60 (Ky. 2015), and the second as having been taken from the final judgment. *Ford*, 578 S.W.3d at 366.

his plea "both made the plea invalid and obscured government misconduct." Appellant's Opening Brief, p. 21. Fourth, he argues the court erred by inserting into the final judgment the requirements that Bell complete SOTP, have five years of post-incarceration conditional discharge, and register as a sex offender. Finally, Bell vaguely contends the court somehow failed to comply with the ADA.

We may readily resolve some of Bell's claims, so we will address them in a different order than he presented them to us. Bell is correct that his plea agreement does not discuss SOTP or conditional discharge or registering as a sex offender. But the court's inclusion of those requirements in the final judgment does not entitle Bell to relief.

As to registering as a sex offender, KRS 17.500(5)(a)1. defines a *registrant* in relevant part as a person who has committed a sex crime; *sex crime* is defined by KRS 17.500(8)(a) as "[a] felony offense defined in Chapter 510 . . . ." Bell was found guilty of a felony offense found at KRS 510.155, so he was a *registrant*. KRS 17.520(2)(a)3. requires a *registrant* to register for life upon conviction for a sex crime if the person has a prior sex crime conviction. Since Bell had a prior conviction for the same offense, he had a prior sex crime conviction. Thus, because Bell was required to register for life, the trial court did not err by so stating in the judgment. In fact, KRS 17.520(6) requires trial courts to "designate the registration period" in final judgments.

The same conclusion applies to post-incarceration supervision. KRS 532.043(1)-(2) requires any person convicted of a felony offense within KRS Chapter 510 to be subject to five years of post-incarceration supervision. *See also* KRS 532.060(3). KRS 532.043 "is clear in stating which offenses *require* post-incarceration supervision." *Richardson v. Commonwealth*, 645 S.W.3d 425, 433 (Ky. 2022) (emphasis added). Since Bell was convicted of violating KRS 510.155, he was required to be subject to the post-incarceration supervision denoted in the trial court's judgment. The trial court did not err.

The SOTP provision of the judgment is not as automatic. A person is a *sexual offender* under the SOTP upon being convicted of a sex crime, as that term is defined in KRS 17.500. As we have explained, Bell qualifies as a sex offender under that statute and so is deemed a sex offender for SOTP purposes. A person is an *eligible sexual offender* for SOTP purposes when either the Department of Corrections, the trial court or both determine the person "[h]as demonstrated evidence of a mental, emotional, or behavioral disorder, but not active psychosis or an intellectual disability" and "[i]s likely to benefit from the [SOTP] program." KRS 197.410(2)(a)-(b).

In other words, contrary to the Commonwealth's seeming position in its brief, a person is not absolutely required to be referred to the SOTP upon meeting the definition of a sexual offender. Instead, the decision to refer a sexual

-8-

offender to SOTP is discretionary. *See, e.g.*, *Richardson*, 645 S.W.3d at 429 (holding that appellate courts review the decision to refer a defendant to SOTP for an abuse of discretion). Of course, a court would have no discretion to exercise if referral to SOTP was automatic whenever the defendant is a *sexual offender*.

To constitute an abuse of discretion, a decision must be "arbitrary, unreasonable, or unsupported by law." *Id.* Bell has presented evidence that he has autism and a lengthy history of mental health concerns. But we cannot say that it was arbitrary or unreasonable for the trial court to deem Bell an *eligible sexual offender* in light of the competency report outlining Bell's ability to participate rationally in his defense and knowledge of the nature of the charges against him. Bell also had a history of committing the same offense, meaning that his need for treatment was acute.

We understand Bell's argument that the SOTP is ill-suited for persons with autism. But Bell has not shown that the trial court's decision to refer Bell to the SOTP was so ill-advised as to be an abuse of discretion. *Richardson*, 645 S.W.3d at 432 ("Having presided over the case since Richardson was indicted in October 2016, the trial court was best suited to determine Richardson's eligibility for the program. Further, the trial court's reasoning that Richardson could address potential learning problems with the Department of Corrections is consistent with

the SOTP statute, which gives both the Department of Corrections and the court a role in assessing an offender's eligibility.").

We also discern no merit in Bell's argument that he is entitled to relief due to an allegedly "materially false representation of the facts" in the factual basis for his guilty plea. The gist of Bell's argument is that the trial court's oral recitation of the factual basis during the plea hearing stated that the ad to which Bell responded depicted an undercover agent posing as a minor, but the ad actually stated the undercover agent was 18.

Bell is correct that the ad stated the person depicted was 18. But we nonetheless discern no reversible error. Bell cites to no Kentucky precedent and the cases he cites from outside Kentucky merely stand for the unremarkable proposition that pleas may be improper if intentionally designed to avoid scrutiny of government misconduct.[5] To cover up governmental misconduct, there of course must be governmental misconduct. Bell does not explain precisely what type of governmental misconduct occurred here or how the plea agreement helped avoid scrutiny for that alleged misconduct.

---

[5] We need not delve into the minutiae of the foreign cases cited by Bell as they are not binding. However, we note that the three cases he cites are materially distinguishable because none involves an erroneous factual basis for a plea.

Also, Bell's argument that his plea somehow caused him to waive an entrapment defense fails because a valid guilty plea waives nearly all defenses. *Jackson v. Commonwealth*, 363 S.W.3d 11, 15-16 (Ky. 2012). Bell responded to the ad and persisted in seeking sexual relations with the undercover officer even though the officer said she was 17. Bell cites to no authority which entitles him to relief. Moreover, the actual crime for which Bell was indicted and pleaded guilty is not based upon any ads being placed by a minor, notwithstanding the trial court's verbal miscue. The ad said the person who placed it was 18 and seeking relations with an 18-year-old is not a crime. Had that been the extent of Bell's conduct or the trial court's factual basis, Bell's argument would be stronger. But that is not what happened.[6]

The indictment to which Bell pleaded guilty does not mention that the ad was placed by a minor. The oral factual basis given by the circuit court states, correctly, that when the undercover agent told Bell she was 17 he persisted, via usage of electronics, in wanting to meet at a hotel to engage in sexual activity. Indeed, as the trial court noted, Bell even agreed to pay the agent $75 as an oxymoronic mandatory donation. Thus, it is uncontested that Bell used electronic

---

[6] Our Supreme Court has noted that RCr 8.08, which governs pleas, "does not expressly contain that requirement that a trial court ascertain a factual basis before accepting a guilty plea." *Chapman v. Commonwealth*, 265 S.W.3d 156, 183 n.72 (Ky. 2007). Like our Supreme Court did in *Chapman*, however, we will assume for the sake of argument that a trial court "errs by not ascertaining the factual basis underlying a guilty plea before accepting that plea . . . ." *Id.* at 183.

means to procure sexual relations with a person who represented themselves to be 17 years old. In other words, the fact that the court misstated that the advertisement was placed by a minor was a regrettable verbal miscue, not an error which entitles Bell to relief.

To be clear, while Bell did waive a potential defense of entrapment and all other defenses by pleading guilty, a jury may still have struggled with finding Bell guilty of "believing" (or wantonly or recklessly believing) that the officer with whom he was communicating, but had never met, was a minor given the officer's initial representations that she was 18, but only later pretended to be a 17-year-old girl who could, under certain circumstances, still consent to sexual relations.

KRS 510.020(3) states:

A person is deemed incapable of consent when he or she is:

(a) Less than sixteen (16) years old;

(b) Sixteen (16) or seventeen (17) years old and the actor is at least ten (10) years older than the victim at the time of the sexual act;

Therefore, in Kentucky the fictional 17 year old portrayed would have had the legal capacity to consent to sex with Bell if he had been under the age of 27 at the time of their interaction.

Next, KRS 510.155(1) states:

-12-

It shall be unlawful for any person to knowingly use a communications system . . . or any other electronic means, for the purpose of:

(a) Procuring or promoting the use of a minor, including a peace officer, or a person working in coordination with law enforcement, posing as a minor *if the person believes that the peace officer or the person working in coordination with law enforcement is a minor or is wanton or reckless in that belief*[.]

Therefore, pursuant to the statute, the issue for the jury would have been whether Bell believed he was soliciting someone under the age of 18 to engage in sex. Given that law enforcement affirmatively advertised themselves as being 18 and then, only after luring Bell, became coy as to their pretended age before stating they were 17, it may have been utterly reasonable to the jury to have determined that Bell believed he was talking to a female well above 18 who was just trying to "sell him" thinking that he might be more willing to engage with her if she pretended to be younger than she was. Likewise, and remembering Bell had never met this fictitious girl, it was at least a theoretical possibility that Bell would have rejected a true 17-year-old upon meeting "her." These issues may have been another impetus behind the Commonwealth's lenient sentencing offer. We note these circumstances not to absolve Bell, but state them to point out the thin evidence offered by law enforcement in their zeal to locate, engage, and prosecute potential pedophiles.

-13-

Next, Bell's arguments regarding the ADA do not entitle him to relief. Bell contends the trial court somehow violated the ADA by not "sufficient[ly] consider[ing]" his autism. But Bell does not cite to any specific acts or inactions by the trial court which violate the ADA. Instead, Bell merely notes that he has a disability and then cites to a statute which merely states in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.[7] § 12132. Bell does not show how the trial court, or the Commonwealth, violated that statute or (any other authority). Bell's arguments notwithstanding, denying the continuance or a fresh assessment of his competency at the time of his guilty plea did not violate the ADA. Of course, courts generally should take steps to ensure that all parties to all cases are not subject to discrimination. However, we discern no ADA-based error.

Next, we readily conclude Bell is not entitled to relief stemming from the trial court's denial of his motion for a continuance. "The trial court has wide discretion when deciding whether to grant a motion for a continuance." *Taylor v. Commonwealth*, 611 S.W.3d 730, 735 (Ky. 2020). *See also* RCr 9.04. In fact, our Supreme Court has held that denying a motion for a continuance "does not provide

---

[7] United States Code.

-14-

grounds for reversing a conviction unless" the trial court's "discretion has been plainly abused and manifest injustice has resulted." *Bartley v. Commonwealth*, 400 S.W.3d 714, 733 (Ky. 2013) (internal quotation marks and citations omitted).

> Generally, when deciding whether to grant a continuance, a trial court:
>
> > must consider the: 1) length of delay; 2) number of previous continuances; 3) inconveniences to parties, witnesses, counsel, and the court; 4) complexity of the case; 5) availability of other competent counsel; 6) whether the movant sought delay for his own sake or caused the need for it and; 7) whether a denial of the continuance would lead to identifiable prejudice.

*Taylor*, 611 S.W.3d at 735. "Identifiable prejudice is especially important. Conclusory or speculative contentions that additional time might prove helpful are insufficient. The movant, rather, must be able to state with particularity how his or her case will suffer if the motion to postpone is denied." *Bartley*, 400 S.W.3d at 733. Identifiable prejudice is so important that our Supreme Court has affirmed the denial of a continuance due to a lack of identifiable prejudice even when all other factors favored the movant. *Morgan v. Commonwealth*, 421 S.W.3d 388, 393 (Ky. 2014) ("The first six [continuance] factors arguably weigh in favor of Morgan, or at least do not weigh against him . . . . However, Morgan has failed to demonstrate that the trial court's denial of the continuance resulted in identifiable prejudice . . . . Accordingly, the trial court did not abuse its discretion in denying Morgan's motion for a continuance"). In a civil case (where the same continuance

-15-

factors apply), we have held that identifiable prejudice requires a showing of different results. *Guffey v. Guffey*, 323 S.W.3d 369, 372 (Ky. App. 2010).

Before we address the continuance factors, however, we must resolve Bell's contention that this is not a typical continuance denial but instead is a denial of his constitutional right to have the presence of his counsel of his choice. Of course, "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment" but "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697, 100 L. Ed. 2d 140 (1988).

As Bell stresses, a true denial of the right to a defendant's chosen counsel does not require a showing of prejudice because it is a structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-150, 126 S. Ct. 2557, 2563-65, 165 L. Ed. 2d 409 (2006). *See also Darcy v. Commonwealth*, 441 S.W.3d 77, 85 (Ky. 2014). But Bell had an attorney of his choice present at sentencing. Consequently, he was not truly deprived of his right to be represented by counsel of his choice. *Gonzalez-Lopez* is materially distinguishable because the United States conceded in that case that the trial court had deprived the defendant of

counsel of his choice; the only question was whether the deprivation was subject to a harmless error analysis. *Gonzalez-Lopez*, 548 U.S. at 144, 126 S. Ct. at 2561.

Bell has not cited, nor have we independently located, any cases in which a defendant retained multiple attorneys and it was deemed a constitutional violation, or any other type of error, for a court to deny a continuance because some – but not all – of the defendant's retained attorneys could not appear. In fact, though not cited by the parties, Bell's argument runs directly contrary to well over a century of Kentucky precedent. *See, e.g.*, *Stephens v. Commonwealth*, 9 Ky. L. Rptr. 742, 6 S.W. 456, 456 (Ky. 1888) ("The absence of one of two or more counsel employed by the defendant in a criminal prosecution cannot be a sufficient reason for continuing the trial to the next term, especially when it does not clearly appear that a fair trial cannot be had without his presence. Such practice would frequently result in an indefinite postponement of criminal trials."); *Sizemore v. Commonwealth*, 249 Ky. 75, 60 S.W.2d 100, 101-02 (1933) ("[W]e have uniformly held that if the record developed that counsel who was present and conducted the trial was familiar with the witnesses and the facts and possessed such professional standing and ability as to enable him to properly present the defense growing out of such facts, the mere absence of associate counsel would not authorize a continuance, and that the discretion of the trial court in so determining would not be disturbed on appeal."); *Frost v. Commonwealth*, 258 Ky. 709, 81

S.W.2d 583, 588 (1935) ("It is not asserted in the affidavit that the other member of the firm who was present was not acquainted with the facts or not prepared to properly present appellant's defense, nor does the record disclose any such state of case. Appellant's defense was ably and skillfully presented. One represented by such capable and eminent counsel has no just ground for complaint, because of the absence of other counsel.").

In sum, there is a "universal" rule in Kentucky precedent that a defendant is not inherently entitled to a continuance due to the absence of some, but not all, of his or her retained attorneys because "[w]hile the law entitles a defendant in a felony charge to be represented by counsel, there is no law with which we are acquainted that entitles him to have present at his trial all and each of the many individual counsel that he sees proper to employ." *Brandriff v. Commonwealth*, 227 Ky. 389, 13 S.W.2d 273, 276 (1929). Although the cited cases are aged, they have not been overruled. Thus, we are bound by them. *See* Kentucky Rules of Supreme Court ("SCR") 1.030(8)(a).

Having determined that the denial of a continuance here is not a structural error, we now assess whether the trial court abused its discretion by denying Bell's motion to continue sentencing. At least some factors favor Bell as there had been no previous sentencing delays and he only sought to delay the

sentencing to the following month. Moreover, Bell did not appear to have planned on calling witnesses, so the inconvenience to witnesses prong was neutral.

But any delay inconveniences the trial court, given its busy schedule. And, as previously discussed, Bell already had competent counsel available for sentencing. Also, Bell did not ask for the continuance until only a few days before the sentencing, despite the fact Mahoney had been assisting in Bell's case for months and the sentencing had been scheduled for roughly six weeks. So, the delay in requesting a continuance, and any prejudice resulting from that delay, are attributable to Bell. The case was not so complex as to require additional time to prepare for sentencing.

Most crucially, Bell has not shown identifiable prejudice. We do not question Mahoney's knowledge of autism's impact on criminal defendants, but Bell has not shown what material difference Mahoney's presence at sentencing would have made. Bell has not shown, for example, that he wished to present some type of expert witness regarding autism which Mahoney alone could have effectively examined. Bell has not argued or shown that his other retained attorney was ineffective or unfamiliar with the case.[8] And Bell received the minimum

---

[8] While Bell makes allusions to his attorney's lack of expertise with autism, he does not directly argue that his counsel was ineffective. Instead, the argument appears to be that Mahoney would have been more effective. Bell's local counsel helped Bell obtain what appears to be a favorable plea agreement. Indeed, Bell received a lesser sentence for a second offense than for his first offense. And there is no requirement that an attorney be intimately familiar with autism or any other disability to represent effectively a client with that disability. The issue is not whether

sentence – exactly what his plea agreement called for – so Mahoney could not have made any arguments which would have substantively lowered Bell's sentence. In short, Bell has not demonstrated how Mahoney's presence would have made any tangible, meaningful difference at sentencing. Bell has not shown identifiable prejudice and therefore we affirm the trial court's denial of his motion for a continuance. *See, e.g.*, *Morgan*, 421 S.W.3d at 393.

We now turn to the heart of this appeal: Bell's contention that the trial court erred by not readdressing his competency. Bell is correct that a defendant's competency is not static as "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope v. Missouri*, 420 U.S. 162, 181, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103 (1975). Consequently, our Supreme Court has instructed that "if at any stage of the proceeding the trial court has a doubt as to competency, there is an obligation to make an inquiry." *Harston v. Commonwealth*, 638 S.W.2d 700, 701 (Ky. 1982). *See also* RCr 8.06. But a trial court is not required to "hold

---

another attorney would theoretically have been more effective; the issue is whether the attorney who was present was ineffective. And allegations of ineffective assistance of counsel are not proper arguments on direct appeal. *Humphrey v. Commonwealth*, 962 S.W.2d 870, 872 (Ky. 1998). Moreover, Bell's local counsel also submitted his appellate briefs and "it is unethical for counsel to assert his or her own ineffectiveness for a variety of reasons[.]" *Id.* We are not prejudging any ineffectiveness claims, merely stating that we will not address any in this direct appeal and Bell has not shown that he was without the services of competent counsel, even if Mahoney had more experience with autistic clients.

hearing after hearing in the absence of some appearance of change in the defendant's condition since the ruling on competency . . . [as] there is no right to a continual succession of competency hearings in the absence of some new factor." *Harston*, 638 S.W.2d at 701.

The standard of our review of a trial court's competency decision is "[w]hether a reasonable judge . . . should have experienced doubt with respect to competency to stand trial. It is within the trial court's sound discretion to determine whether reasonable grounds exist to question competency" but if "such grounds do exist, a competency hearing is mandatory." *Woolfolk*, 339 S.W.3d at 423 (internal quotation marks and citations omitted).

In determining whether there are reasonable grounds to question competency, a court may consider the defendant's behavior, demeanor and prior professional opinions regarding the defendant's competency. *Id.* at 423. We give great deference to the trial court's "superior position to evaluate whether there were reasonable grounds to believe that Appellant was competent" and will affirm a trial court's competency determination so long as that decision "is, under the totality of circumstances, a reasonable conclusion . . . ." *Id.*

Bell bases his argument on his lengthy history of mental health concerns and delusional belief about Eminem. But, as precedent makes plain, to receive a second or subsequent competency determination, a defendant must show

-21-

that something material has changed since the previous competency determination. And Bell has not made that showing. First, his mental health history was obviously already in existence when he was referred to KCPC. Therefore, that history was not a material change occurring since the issuance of the KCPC report.

Second, his Eminem delusions were longstanding. In fact, the existence of those delusions is discussed *repeatedly* in the KCPC report. Nonetheless, the report unequivocally concluded that Bell was competent. Thus, any Eminem-related delusions Bell had when he pleaded guilty cannot be considered a material change which necessitated a fresh competency evaluation.

Even Bell's CR 59.05 motion essentially admits nothing material had changed since it noted that "at the time of the plea, [Bell] was suffering from the same delusions which precipitated the competency evaluation." R. at 95. Admitting that the defendant's mental condition had not materially changed after a previous competency evaluation is the opposite of showing a material change had occurred. And Bell did not submit, for example, a document from an unbiased medical or mental health professional opining that Bell's mental health had declined since the issuance of the KCPC report.[9]

---

[9] Bell's parents are physicians, and he submitted a letter from them. But, in addition to the parents' obvious and understandable bias, the letter does not show that Bell's condition had materially changed after the issuance of the KCPC report. Bell also submitted a document from his mother alone, but it states in relevant part that she believed Bell "has suffered repeated delusions and disconnect from reality *all throughout this case.*" R. at 105 (emphasis added). Thus, it does not show a material change. Similarly, Bell submitted an October 2018 report and

-22-

Moreover, the trial court orally stated that it had observed Bell and his demeanor and comportment raised no questions about his competency. A trial court may use its observations of a defendant when determining whether there are reasonable grounds to question competency. *Woolfolk*, 339 S.W.3d at 423.

In sum, considering all the relevant facts and circumstances, Bell has not shown that the trial court abused its discretion by declining to readdress Bell's competency.

For the foregoing reasons, the Jefferson Circuit Court is affirmed.

ACREE, JUDGE, CONCURS.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT:

J. Bart McMahon
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky

---

a June 2019 addendum from a clinical psychologist, but those documents predate Bell's July 2019 KCPC evaluation, so they can also not show that a material change had occurred.